# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA, :

    Plaintiff,                                   Case No. 3:08-cr-126
                                                        Also 3:13-cv-009

                                                        District Judge Walter Herbert Rice
    -vs-                                         Magistrate Judge Michael R. Merz
                                             :

JESUS VILLALBA,

    Defendant.

## REPORT AND RECOMMENDATIONS; DECISION AND ORDER ON MOTIONS FOR DISCOVERY AND EVIDENTIARY HEARING

This § 2255 case is before the Court on Defendant's Amended Motion to Vacate (Doc. No. 93), the Response of the United States (Doc. No. 94), and Defendant's Reply (Doc. No. 96). At Defendant's request, attorney James Fleisher was appointed to represent him in this matter (Doc. No. 81).

The Amended Motion[1] pleads the following Grounds for Relief:

> **First Ground for Relief:** The Petitioner Villalba's rights guaranteed by the Fifth and Sixth Amendments to the Constitution were violated because he received the ineffective assistance of counsel before his plea hearing on July 29, 2009, for reasons including but not limited to counsel failing to effectively and adequately consult with the Petitioner Villalba concerning the terms of the plea agreement, failing to share any discovery in the case with the petitioner, failing to discuss and fully advise the petitioner concerning the terms of the proffer agreement entered into on March 17, 2009, and failing to advise the Petitioner that the plea agreement and statement of facts effectively negated any argument concerning the Petitioner's role in the conspiracy.

---

[1] The Amended Motion is captioned "First Amended Petition for Writ of Habeas Corpus" and references jurisdiction under both 28 U.S.C. § 2241 and 2255. Because this action seeks relief from a conviction in this Court, it is properly brought only under § 2255. Defendant has not attempted to demonstrate jurisdiction under § 2241.

>**Second Ground for Relief**: The Petitioner Villalba's rights guaranteed by the Fifth and Sixth Amendments to the Constitution were violated after his plea hearing on July 29, 2009 by the ineffective assistance of counsel, for reasons including but not limited to counsel failing to effectively and adequately consult with the Petitioner Villalba concerning the presentence report, failing to inform the Petitioner Villalba that counsel did not intend to litigate the issue of the Petitioner's role in the offense, failing to investigate and litigate issues concerning the Government's breach of the proffer agreement entered into on March 17, 2009, and failing to enter any substantive or procedural due process objections to the Court's sentence.

(Amended Motion, Doc. No. 93, PageID 502, 504.)  These two Grounds for Relief are a counsel-assisted re-draft of the four Grounds for Relief raised by Defendant *pro se* in his original Motion to Vacate (Doc. No. 77).

## Procedural History

On August 20, 2008, the grand jury indicted Defendant and two others on one count of conspiracy to distribute five kilograms or more of cocaine (Doc. No. 5).  Defendant was arrested in the Central District of California and removed to this District in custody (Doc. No. 9).  At initial appearance, Magistrate Judge Ovington appointed CJA attorney Vincent Popp to represent Villalba (Doc. Nos. 13, 14, 15).  After hearing, she ordered him detained without bond (Doc. No. 12 and notation order sustaining).

On October 3, 2008, attorney Edward Esqueda entered his appearance as counsel for Villalba (Doc. No. 20).  Mr. Esqueda is not a permanent member of the bar of this Court and was admitted *pro hac vice* (Doc. No. 21 and notation order sustaining).  Under the Local Rules of this Court, Villalba was required to have a trial attorney who is a member of the Court's permanent

bar.  Mr. Popp served in that capacity (See, e.g., Motion to Continue Trial Date, Doc. No. 30, which Mr. Popp signed as "local counsel" and which represents that Mr. Esqueda as "lead counsel" and Assistant United States Attorney William Schenck are "trying to negotiate a plea.")  While Mr. Popp is mentioned in Villalba's original § 2255 Motion as one of the trial attorneys, all allegations of ineffective assistance of trial counsel are directed to the conduct of Mr. Esqueda and not Mr. Popp.

On July 29, 2009, Judge Rice conducted a change of plea hearing (Doc. No. 49); the next day, the signed Plea Agreement between the United States and Defendant was filed (Doc. No. 50).  On June 14, 2010, Judge Rice sentenced Villalba to 204 months confinement.

Villalba appealed (Notice of Appeal, Doc. No. 60).  The Sixth Circuit affirmed the judgment on February 21, 2012.  *United States v. Villalba*, Case No. 10-3791 (6th Cir. Feb. 21, 2012)(unreported, slip opinion at Doc. No. 75).  The timely Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 77) followed on January 15, 2013.

**Analysis**

Villalba accuses his retained attorney, Edward Esqueda, of providing ineffective assistance of counsel in the following ways:

Subclaim 1.    Failing to effectively and adequately consult with the Petitioner Villalba concerning the terms of the plea agreement,

Subclaim 2.    Failing to share any discovery in the case with the petitioner,

Subclaim 3.    Failing to discuss and fully advise the petitioner concerning the terms of the proffer agreement entered into on March 17, 2009,

3

Subclaim 4.   Failing to advise the Petitioner that the plea agreement and statement of facts effectively negated any argument concerning the Petitioner's role in the conspiracy,

Subclaim 5.   Failing to effectively and adequately consult with the Petitioner Villalba concerning the presentence report,

Subclaim 6.   Failing to inform the Petitioner Villalba that counsel did not intend to litigate the issue of the Petitioner's role in the offense,

Subclaim 7.   Failing to investigate and litigate issues concerning the Government's breach of the proffer agreement entered into on March 17, 2009, and

Subclaim 8.   Failing to enter any substantive or procedural due process objections to the Court's sentence.

Petitioner divides these sub-claims chronologically into those which occurred before the plea (Ground One, Subclaims 1 through 4) and those which occurred after the plea (Ground Two, Subclaims 5 through 8). However, the legal standards applicable to counsel's conduct do not differ before and after plea.

**Subclaims Contradicted by Evidence of Record**

The Amended Motion is devoid of any evidentiary support. Although Defendant is the foremost percipient witness about what conversations he had with Mr. Esqueda, he does not offer his own affidavit about what was said or not said by his attorney or about any of the underlying facts of the crime.

However, the record already contains sworn testimony by Villalba which contradicts some of his subclaims. When he appeared before Judge Rice for the plea colloquy on July 29,

4

2009, he was sworn to answer truthfully the questions put to him (Transcript, Doc. No. 80, PageID 390).

By at least March 2006, he had directed his co-conspirators to locate and rent a house in Xenia, Ohio, to use as a stash house. *Id.* at PageID 392. For the first few months of the conspiracy, the co-conspirators oversaw the distribution of cocaine for him. *Id.* at PageID 393. Jose Antonio Villalba also performed the bookkeeping duties for him. *Id.* at PageID 394. His two co-conspirators oversaw the distribution of at least 150 kilograms of cocaine while they were staying at 37 Kays Ways in Xenia, the house they rented at his instruction; they were paid for their services. *Id.* at PageID 395. In January 2007 the co-conspirators were robbed and the operation was moved at his direction to 1954 Stevenson Road in Xenia where it remained for about a year. *Id.* at PageID 396. The operations were then moved to 1549 East Main Street in Xenia at his direction. *Id.* The week preceding May 27, 2008, he arranged for 100 kilograms of cocaine to be sent to this address. *Id.* at PageID 397. After an arrest and seizure of cocaine and money on May 27, 2008, he arranged to have a partial payment for the cocaine picked up by one of his co-conspirators and another person. *Id.* at PageID 398.

Mr. Esqueda advised Judge Rice that he had discussed the mandatory minimum sentence with Villalba and that it appeared Villalba did not qualify for the "safety valve." *Id.* at PageID 400. He told Judge Rice that he had explained to Villalba that only if they could show that Villalba was not in a leadership role would they be able to qualify for the safety valve. He also said, in Villalba's presence, that he explained to Villalba that they could try to proffer one more time so as to obtain a 5K1 reduction. *Id.* at PageID 400-401. Judge Rice explained that a leadership role finding would be likely based on the Statement of Facts and Esqueda acknowledged that in the presence of his client and that evidence contrary to the Statement of

5

Facts would put Villalba in "a position of having just told [Judge Rice] something under oath which he would later be contradicting either directly or through other evidence." *Id.* at PageID 401-402.

Villalba admitted that no one had told him he could receive a sentence less than the mandatory minimum of ten years unless he cooperated further with the Government and Judge Rice gave him leniency for that. *Id.* at PageID 408. Villalba conceded that Mr. Esqueda had gone over the possible sentences with him and had not told him anything different from what Judge Rice had said. *Id.* at PageID 412. He said that he was satisfied with the advice and legal services Mr. Esqueda had given him. *Id.* at PageID 414. Villalba also said he understood that by pleading guilty he was giving up his right to appeal "anything that has occurred in your case before coming to court today." *Id.* at PageID 419. Villalba repeatedly told Judge Rice he had no questions. E.g., at PageID 423, 435.

In the absence of any other evidence – and Villalba himself has failed to provide such other evidence as he would be the most likely witness to have – his admissions during the plea colloquy negate Subclaim 1 because he made contrary admissions. They also negate Subclaim 4 because both Judge Rice and Mr. Esqueda stated during the plea colloquy that the facts in the Statement of Facts, to whose truth Villalba admitted, would make it very difficult to show he did not have a leadership role in the conspiracy. On the basis of their inconsistency with Villalba's sworn statements during the plea colloquy, Subclaims 1 and 4 should be dismissed with prejudice. That is to say, the evidence of record consisting of Villaba's admissions under oath makes it impossible for him to establish either of these two Subclaims.

**The Prejudice Prong of the Strickland Standard**

The remaining six subclaims must be evaluated against the standard for ineffective assistance of counsel adopted by the Supreme Court in in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability

> that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218. To summarize, a defendant seeking to establish an ineffective assistance of trial counsel claim must show both deficient performance by his attorney and resulting prejudice.

In order to decide an ineffective assistance of trial counsel claim, a court need not analyze the deficient performance prong if the prejudice prong is dispositive.

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, *supra,* at 697.

The Court will assume for purposes of argument that it was deficient performance for Mr. Esqueda not to share the results of discovery with his client (Sublaim 2), not to fully discuss the proffer agreement in advance (Subclaim 3), not to consult with his client about the Presentence Investigation Report (Subclaim 5), not to inform his client that he did not intend to litigate the

issue of Villalba's role in the offense (Subclaim 6), not to investigate and litigate issues concerning the Government's purported breach of the proffer agreement (Subclaim 7). And not to enter any substantive or procedural due process objections to the sentence (Subclaim 8). The question remains whether Villalba can show any prejudice from these hypothetical deficiencies in performance.

**Failure to Share Discovery**

In Subclaim 2, Villalba asserts Esqueda was ineffective for failure to share discovery with him. However, he has not suggested any way in which he was prejudiced by Esqueda's failure to share the discovery with him. This Subclaim should be dismissed with prejudice.

**Asserted Sentencing Deficiencies**

In Subclaim 5, Villalba asserts Esqueda did not "effectively and adequately" consult with him concerning the presentence report. In Subclaim 6, he asserts Esqueda did not tell him he did not intend to litigate the issue of Villalba's role in the offense.

During the sentencing hearing, Villalba admitted that he and Esqueda had gone over the presentence report (Transcript, Doc. No. 70, PageID 228). Mr. Villalba indicated he personally had no objections to the report. *Id.* Judge Rice indicated he was basing his conclusion that Villalba should receive a 4-level leadership enhancement not on the Presentence Report, but on the Statement of Facts at the time of the guilty plea. *Id.* at PageID 235. Judge Rice calculated the sentencing guideline range as 262 to 327 months. *Id.* Judge Rice imposed a sentence of 204

months, which is fifty-eight months or almost five years below the bottom of the guidelines range. *Id.* at PageID 239.

Villalba has not indicated what prejudice he suffered from the hypothetical instance of deficient performance of which he complains in Subclaim 5.  He does not say what he would have done as a result of more consultation about the Presentence Report and does not now suggest any objections he would have raised to it.  In any event, the sentencing transcript shows that Judge Rice relied on the guilty plea colloquy which showed admitted distribution of more than 150 kilograms of cocaine.  Thus Villalba suffered no prejudice from the attribution to him of an additional 350 kilograms in the Presentence Report.

Nor does Villalba show any prejudice with respect to Subclaim 6.  In particular, he has not suggested any way in which he could have contested the leadership role enhancement without contradicting statements he made under oath at the plea colloquy.  Thus even assuming Esqueda had indicated an intention to litigate the leadership role and then changed his mind but not told Villalba, there is still no showing, nor even a suggested method of showing, any way Villalba could have defeated that enhancement.  As Judge Rice commented at sentencing, at least in Dayton, Ohio, an offense of distribution of 500 kilograms of cocaine is exceptionally rare.  An amount of only $1/10^{th}$ of one percent of that much cocaine (500 grams) would, by law, require a mandatory minimum sentence of five years.

Subclaims  5 and  6 should therefore be dismissed with prejudice.

**Deficiencies Regarding the Proffer Agreement**

In Subclaim 3, Villalba asserts Esqueda provided ineffective assistance in failing to

discuss and "fully advise" Villalba about the terms of the proffer agreement. In Subclaim 7 he asserts Esqueda failed to "investigate and litigate" issues concerning the breach of the proffer agreement.

Villalba's Amended Motion to Vacate places much emphasis on the proffer agreement, which is attached to it as an exhibit (Doc. No. 93-1, PageID 507-08). Villalba avers that Esqueda told him at the time of the proffer that "none of the information provided by the Petitioner could be used by the Government to increase the severity of his sentence." (Amended Motion, Doc. No. 93, PageID 497, ¶ 9.) The letter itself provided that no statements made by Villalba "would be used against him in the Government's case-in-chief at trial or for purposes of sentencing." *Id.* at ¶ 10. The statements could be used only for cross-examination "in the event that they are contrary to information provided by the defendant to the court or probation office. . . ." *Id.* at ¶ 12. He asserts, however, that the Government breached the proffer agreement in that

> Many of the disclosures made by the Petitioner, including but not limited to the total amount of illegal narcotics distributed and the full array and roles of persons involved, were ultimately included in the Statement of Facts presented to the Court as part of the Petitioner's Plea Agreement.

*Id.* at ¶ 14. Villalba claims "[u]pon information and belief, . . . that much of the information contained in the Statement of Facts was derived directly from the statements made by the Petitioner Villalba in the proffer session on March 17, 2009." *Id.* at ¶ 19.

In its Supplemental Response, the United States refuted Villalba's theory of prejudice:

> Villalba's theory of prejudice fails because the record refutes the factual basis on which it is premised. The details in Villalba's statement of facts that, as he notes, were lacking in the August 2008 complaint and affidavit were included in the November 2008 statement of facts agreed to by co-defendant Jose Guadalupe Villalba-Meza's (Meza) in his plea agreement. (R. 29, Statement of Facts attached to plea agreement; copy attached to this filing.)

11

(Supplemental Response, Doc. No. 94, PageID 510.)  In his Reply, Villalba makes no substantive response to this allegation by the Government, merely repeating his assertion that the Statement of Facts which he admitted were true were taken from his proffer (Reply, Doc. No. 96, PageID 533).  He hypothesizes "[a] showing that the proffer agreement had been breached by using the proffer information to enhance the sentence would have resulted in a finding that no leadership role could be assessed, and Villalba would then have qualified for application of the safety valve." *Id.* at PageID 534.  But he offers no refutation of the Government's assertion that all the essential information was there in the Statement of Facts from the co-defendant, made four months before his proffer.  And again he offers no evidence, including no evidence from his own mouth, by which he would have been able to show that he did not have a leadership role.

Subclaims 3 and 7 are therefore without merit and should be dismissed with prejudice.

**Failure to Raise Due Process Objections**

In Subclaim 8 Villalba asserts his counsel failed to raise any procedural or substantive objections to the sentence.  That fact is proven by the sentencing transcript (Doc. No. 70, PageID 242).  But again, Villalba has made no showing of prejudice as a result of this omission.  He does not suggest what procedural or substantive objections should have been made or why they would have been successful.  The absence of any prejudice is demonstrated by the fact that the Court of Appeals specifically reviewed the record for any difficulties with the sentence and concluded "our independent review of the record reveals no non-frivolous basis on which to challenge Villalba's sentence, which was both procedurally and substantively reasonable." *United States v. Villalba*, Case No. 10-3791 at PageID 318 (6th Cir. Feb. 21, 2012)(unreported, slip opinion at

Doc. No. 75).

**Requests for Discovery and Evidentiary Hearing**

Villalba requests discovery, including the authority to issue subpoenas, and an evidentiary hearing to develop the record. He has not satisfied the standards for granting those two requests in Rules 6 and 8 of the Rules Governing § 2255 Proceedings.

Rule 6 of the § 2255 Rules parallels the Rule 6 for § 2254 Cases. A habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court's exercise of discretion. Rule 6(a), Rules Governing § 2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S. 286 (1969); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000). Before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. *Bracy*, 520 U.S. at 904, *citing United States v. Armstrong*, 517 U.S. 456, 468 (1996). The burden of demonstrating the materiality of the information requested is on the moving party. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *cert. denied,* 537 U.S. 831 (2002), *citing Murphy v. Johnson,* 205 F.3d 809, 813-15 (5th Cir. 2000). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or require an evidentiary hearing.'" *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004), *quoting Stanford*, 266 F.3d at 460.

Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley,* 380 F.3d 932, 974 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005), *citing Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also Stanford*, 266 F.3d

13

at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Williams,* 380 F.3d at 974, *citing Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

Villalba has not specified what discovery he wishes to conduct. As noted above, he has not provided the Court with any evidence from himself about his conversations with Mr. Esqueda and it is difficult to believe that others would have better information. As to whether or not he had a leadership role, his co-defendants and other co-conspirators would presumably have information, but they could not testify without waiving their privilege against self-incrimination.

With respect to an evidentiary hearing, Villalba has not given any indication of what content he wants to present to complete the record.

## Conclusion

Defendant's request for discovery and an evidentiary hearing are DENIED. Based on the foregoing analysis, the Magistrate Judge concludes all of Mr. Villalba's ineffective assistance of trial counsel claims are without merit and should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

July 25, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).